REYNOLDS v. REES.

1. Findings of fact by the Circuit Judge in a case of chancery approved.
2. In action by executrix, an attorney is not incompetent under section 400 of the code to testify to communications between himself, as attorney for the testator, and the administrator, now deceased, of an estate under which defendants claim.
3. Entries on the docket and the common pleas journal, and the testimony of attorneys engaged, are competent evidence to establish the existence and contents of a judgment record which was proved to be lost. This case distinguished from *Brown* v. *Coney*, 12 *S. C.*, 144.
4. A party who in good faith advanced money to an administrator for the use of the estate, and received as security the pledge of a bond and mortgage held by the administrator, has the right to a foreclosure of such mortgage.
5. But the assignee having afterwards put this bond in the hands of this administrator, who was also an attorney, for collection, and who in his own name sued the bond to judgment, and the mortgagor, without notice of the assignment, having settled the judgment by a surrender of the mortgaged land, which thereupon passed into the possession of the heirs of the estate represented by this administrator, the lands remained liable for the payment of the mortgage debt, even though the mortgagor be relieved of further liability.
6. The bond should be credited with any payments made by the obligor, but not with payments made by the administrator upon the debt for which the assignment of this bond was collateral; the bond stood as security for the balance due on the debt thus secured.

Before KERSHAW, J., Sumter, October, 1884.

The Circuit decree, after stating the conclusions of law quoted in the opinion of this court, proceeded as follows:

My reasons for the foregoing findings and conclusions are as follows:

The bond upon which the mortgage herein was founded was placed in the hands of the said Charles Mayrant by Judge Fraser, the agent of the said Mark Reynolds, the assignee thereof, for suit. He was thereby enabled to deal with Paul Rees as if he were still the true owner of the bond and mortgage. Paul Rees having no knowledge that the bond had been assigned, and no notice of any circumstance calculated to put him on his guard or to induce inquiry, acting under the belief that Mayrant was still the real owner, settled with him as such, gave up the land in discharge of the judgment obtained against him by Mayrant on the bond, and became the tenant of Mayrant and the defendants, attorning to them and paying rent on the land as of the estate of W. W. Rees. Under these circumstances, Dr. Mark Reynolds and his representatives are estopped so far as Paul Rees is concerned, and are to that extent bound by the settlement made between Charles Mayrant and Paul Rees. This proposition is sustained both by principle and authority, and I need do no more than refer to a few cases to establish it. *Holbrook* v. *Colburn*, 6 *Rich. Eq.*, 293; *Maybin* v. *Kirby*, 4 *Rich. Eq.*, 113; 3 *Lead. Cas. Eq.* (Am. edit.), 373; *Bull* v. *Rowe*, 13 *S. C.*, 370.

The same authorities and principles will suffice to show that while plaintiff is estopped against setting up the mortgage against Paul Rees, the rights of the assignee remain in full force, so far as Mayrant and the defendants, his *cestuis que trust*, are concerned. Mayrant acted with full knowledge of the rights of the assignee, and the defendants are bound by all the equities which affected him. This is too plain to need argument or authority to support it.

The position taken on the part on the defendants that Mr. Mayrant, as administrator, had no right to bind the estate of W. W. Rees by his bond to Dr. Reynolds, appears to me to be avoided when it is shown, as it has been shown, that the debt was contracted for the purposes of the estate. The sale of the land was authorized by the court upon the hypothesis that the necessities of the estate required it, to raise money for immediate

and pressing exigencies. The evidence shows that the sales did not bring the cash. It is a just inference that Mayrant borrowed money from Reynolds on the securities obtained by the sale, to meet the same demands whose existence had induced the court to sell the land. If there was a necessity of that sort, the administrator could borrow money for the use of the estate, and assign the assets of the estate to secure the same.

Under the authority of the court, the land had been sold and converted into choses in action, payable to the administrator, and were at his disposal as assets of the estate. In regard to these, it is said in the case of *Rhame* v. *Lewis,* which is a case of great authority, and is cited by counsel for the defendants, that "the administrator's power of disposition over his intestate's choses in action remains unaffected by this legislation, and continues as his power over the assets generally before the acts has been described to have been. Any one may securely take them from him, either absolutely or conditionally, by any of the usual methods of legal or equitable transfer for value, and in good faith." The reference to legislation was that in restraint of the common law powers of the administrator over the specific goods of his intestate. 13 *Rich. Eq.,* 299.

The learned chancellor (Inglis), who delivered the admirable opinion in that case, summed up the propositions established as to this point, as follows: "A valid alienation, by way either of sale or pledge, of choses in action belonging to the intestate estate, may be made by the administrator of his own motion, to any one who takes them *bona fide* and for value, not grossly inadequate, and upon such alienation, they will be discharged of all equities which attach upon them merely as assets." *Ibid.,* 329. Nothing can be added to this admirable exposition of the law on this subject. The good faith of Dr. Reynolds in the transaction has not been questioned, and the bond of Mayrant shows on its face that it was given by Mayrant as administrator. There is literally nothing to impeach the *bona fides* of the transaction.

As to the grounds for overruling the objections to the evidence, they will be sufficiently apparent upon consideration. The objections to the admissibility of the evidence offered to establish the

lost records, all tended first to show the loss of the records, and next to show that such records had existed, and what they were. I could not exclude the evidence, because it tended to show those facts. The position taken that, inasmuch as a judgment cannot be proven but by the production of the record, which is admitted to be the rule, a lost judgment is incapable of being established, I apprehend is not well founded.

Since the hearing, I have been furnished by the counsel for the defendants with a reference to the case of *Harrison* v. *Manufacturing Company* (10 *S. C.*, 296), as showing that the "judgment book" is the proper depository of a judgment, and that there was no proof that the clerk searched for that book. It is enough for my purpose to say that there was abundant evidence that the clerk's office was searched, and that no trace of the judgment in question could be found but those produced in this case. I cannot assume that there was any book in the office that was not examined in the face of that evidence. I may remark that the case last mentioned may, upon examination, fail to establish that there is any better evidence of an order or decree on the equity side of the court than the order or decree itself, signed by the judge, and filed by the clerk.

I was unable to perceive the pertinency of the objections to the evidence, based upon section 400 of the Code of Procedure. As to the amount of the mortgage debt, I consider the judgment obtained on the bond by Mayrant the best evidence thereof. Reynolds's agent having placed the bond in Mayrant's hands for suit, and the suit having been brought in the name of Mayrant, the judgment is to be regarded as obtained for the benefit of Reynolds, and is in effect Reynolds's judgment. The amount to be recovered in this case is fixed by that judgment. The land is liable for that amount, but not for the costs, as they were against Paul Rees, and were settled by the arrangement between him and Mayrant.

It is therefore ordered, adjudged, and decreed, that the said mortgaged premises described in the complaint in this action, or so much thereof as may be sufficient to pay the sum due, with the interest and costs, be sold, &c.

From this decree defendants appealed upon the following exceptions:

1. That there ever was a final judgment in the case entitled Charles Mayrant, administrator, against Elizabeth N. Bradley and others.

2. That Charles Mayrant was the administrator of the estate of W. W. Rees.

3. That the bond of Charles Mayrant and Dr. Mark Reynolds was given for the benefit of the estate of W. W. Rees.

4. That the money received from Dr. Mark Reynolds was used for the estate of Rees.

5. That there was any judgment growing out of the case of Charles Mayrant, administrator, against Elizabeth N. Bradley *et al.*, sufficient to give the authority claimed.

6. That the bond and mortgage of Paul Rees was a technical asset of the estate of W. W. Rees.

7. That there was any sufficient authority granted to Charles Mayrant to sell the lands described in said complaint.

8. That the said Mayrant had the power to deal with the bond and mortgage of Paul Rees as if it were a technical asset of the estate of Rees.

9. That the bond of Paul Rees having been paid by him, and he discharged from any liability thereunder, that the mortgage was not discharged as against the plaintiff.

10. That the testimony of the Hon. T. B. Fraser was competent or relevant.

11. That the testimony of W. H. Cuttino was not irrelevant and incompetent.

12. That the common pleas calendar for 1872 could be used in evidence before it was established that any final judgment had been made in the cause.

13. Because his honor erred in ignoring the testimony that, at the time Mayrant withdrew the bond and mortgage of Paul Rees from Judge Fraser, that he, Mayrant, had paid to the said Fraser more than the amount of the bond of Paul Rees on the obligation to which said bond was collateral, some of which payments are stated to have been made by Paul Rees.

14. Because his honor erred in not holding that if the powers

claimed for Charles Mayrant, administrator, were duly granted, that they were specific and limited and could not be departed from.

*Messrs. Moises & Lee* and *H. F. Wilson,* for appellants.

*Messrs. Jos. H. Earle* and *J. D. Pope,* contra.

September 26, 1885.   The opinion of the court was delivered by

MR. JUSTICE McIVER.   Some time in 1864 W. W. Rees died, leaving a last will and testament, of which one Samuel J. Bradley was the qualified executor.   Before fully administering the estate of his testator, Bradley died, leaving a will, of which Elizabeth Bradley was the qualified executrix.   It is alleged in the complaint that one Charles Mayrant was duly appointed administrator *de bonis non, cum testamento annexo,* of the estate of said W. W. Rees, and that as such he filed a complaint against said Elizabeth Bradley, as executrix, as aforesaid, and the heirs at law and devisees, asking, amongst other things, for authority to sell a portion of the lands of the estate of Rees to pay debts, current expenses, taxes, &c., of said estate ; that such authority was duly granted, and on January 30, 1873, in pursuance of such authority, the said Mayrant, as administrator as aforesaid, duly sold several parcels of land belonging to said estate, including the parcel described in the complaint, which was purchased by the defendant, Paul Rees, who, to secure the purchase money, executed his bond, secured by a mortgage of said parcel, to the said Mayrant, as administrator as aforesaid ; that afterwards, to wit, on September 24, 1873, the said Mayrant, as administrator as aforesaid, in order to raise money for the use and benefit of said estate, borrowed from plaintiff's testator the sum of seven hundred and twenty-six dollars and forty-two cents, for which he gave his bond, secured by an assignment of the above mentioned bond and mortgage of Paul Rees ; and the object of this action, to which the heirs at law of W. W. Rees, who are now in possession of the mortgaged premises, are made parties, is to obtain a foreclosure of said mortgage.

It also appeared in evidence that the bond of Paul Rees was,

at some time prior to April 15, 1876, delivered by Judge Fraser, who was then the attorney and agent of plaintiff's testator, to said Charles Mayrant, at his request, for suit, he being a practising attorney, and was by him sued in his own name, without the knowledge or consent of Mark Reynolds, the expectation of Judge Fraser being that it would be sued in the name of Reynolds as assignee. On May 15, 1876, Mayrant, as administrator as aforesaid, obtained judgment on the bond against Paul Rees, and Mayrant settled said judgment with Paul Rees "by taking the land back as the property of the estate of W. W. Rees, and the said Paul Rees then rented the same from the said Mayrant while he lived, and from the defendants since his death, as of the estate of the said W. W. Rees, deceased ;" but the said Paul Rees, at the time of this settlement, had no notice of the assignment of his bond and mortgage to said Mark Reynolds. It also appeared that Charles Mayrant died before the commencement of this action, and that the amount due on the bond of Mayrant to Reynolds exceeded the balance due on the bond of Paul Rees to Mayrant.

These allegations of the complaint, and the other facts above stated, were found by the Circuit Judge to be true, and he concluded as matter of law : I. That Paul Rees is fully discharged from all liability to the plaintiff on his bond aforesaid. II. That the plaintiff is entitled to a judgment of foreclosure and sale of the mortgaged premises for the purpose of paying the amount due on the bond of Paul Rees as ascertained by the judgment recovered against him by Mayrant, not, however, including the costs of that case. III. That plaintiff is entitled to a judgment for the costs of this action, to be paid from the proceeds of the sale of the said land, or if that should not be sufficient to pay the debt due on said mortgage, to be paid by the defendants other than Paul Rees, who should only pay his own costs.

From this judgment the defendants appeal upon numerous grounds set out in the record, which need not be repeated here, but there is no exception by any of the parties to the first conclusion of law as to the discharge of Paul Rees from any personal liability, and therefore that question is not before us for consideration.

So far as the exceptions impute error to the Circuit Judge in his findings of fact, it will be sufficient to say that there was testimony tending to support his several findings, and that they are not contrary to the manifest weight of the evidence. On the contrary, we think they are well supported by the testimony.

As to the exceptions based upon the incompetency of the testimony offered, they may be divided into two classes: First. Those based upon the provisions of section 400 of the code. Second. Those based upon the idea that the existence and contents of a record cannot be established by parol evidence. We are unable to perceive the pertinency of the objection based upon section 400 of the code. Judge Fraser, whose testimony was objected to on this ground, was not a party to the action, and had no interest in the matter, and we are unable to perceive any ground upon which his testimony as to what occurred between himself as the attorney of plaintiff's testator and Mayrant can be regarded as incompetent.

Second. It is true that the original record of the proceedings in the case of *Mayrant* v. *Bradley and others* was not produced, but its loss was fully proved, which, under well settled rules, let in secondary evidence, which, in our judgment, was not only competent and relevant, but was amply sufficient to establish the existence of such a case and the result of it. The entries on the docket and the common pleas journal, together with the testimony of Judge Fraser and Mr. Blanding, who seem to have been the attorneys immediately charged with the case, conclusively show that there was such a case, and that it culminated in an order for the sale of a portion of the lands of the estate of W. W. Rees for the purpose of providing means to meet the wants of the estate. This case differs materially from that of *Brown* v. *Coney* (12 *S. C.*, 144), relied on by appellants. In that case the court was asked to infer the existence of a judgment from certain fragments of a record supplemented by parol testimony. As was there said: "It is not pretended that there was any direct evidence whatever of any judgment or final order for the partition of the land in question, either by record or by parol. No such record was produced, and no witness testified that any such record had ever existed." Here, however, there was evi-

dence, secondary it is true, but upon proof of the loss of the original, competent, that there was an order of sale.

Assuming, then, as true the facts found by the Circuit Judge, we think his conclusion of law was unquestionably correct. Here is a case in which a third person advanced his money, in perfect good faith, to the administrator of an estate for the uses of said estate, and took as security a pledge of certain assets of the estate—the bond and mortgage of Paul Rees—which, according to the case of *Rhame* v. *Lewis* (13 *Rich. Eq.*, 329), cited by the Circuit Judge, he had a right to do under the circumstances proved; and, in the absence of anything that would defeat such right, plaintiff's testator would clearly have the right to subject the mortgaged property to the payment of the money so advanced for the use of the estate by a foreclosure of the mortgage.

It is contended, however, that the settlement made by Mayrant with Paul Rees of the judgment recovered on his bond, which said Mayrant had been enabled to make by the incautious delivery to him by the agent of plaintiff's testator of said bond, in the absence of notice to Paul Rees of the assignment of said bond and mortgage, operated as an extinguishment of the mortgage. It is true that the payment of the mortgaged debt operates as an extinguishment of the mortgage, but there was no payment of the mortgaged debt in this case. The mortgagor simply surrendered to the original mortgagee the property given to secure the payment of the debt, and although the effect of this may very possibly be, as the Circuit Judge held, to relieve the mortgagor, in the absence of notice of the assignment, from any personal liability on the mortgage debt, yet it certainly cannot have the effect of releasing the property originally given as security for such debt from liability for the payment of the debt to the party really entitled thereto.

As between Mayrant and the plaintiff's testator, the latter was unquestionably entitled, both in law and equity, to the debt secured by the bond and mortgage of Paul Rees, and any money or property received by Mayrant in satisfaction of such debt would, in his hands, or in the hands of those whom he represented, necessarily enure to the benefit of the plaintiff's testator, the person to whom the debt was really due. Reynolds having

advanced money for the use of the estate of W. W. Rees, is entitled to have it refunded out of the property of the estate given to secure such advance by the legal representative of the estate.

Of course, we are not to be understood as saying that where a person lends money to the administrator of an estate, that any of the visible, tangible property of the estate may be mortgaged by the administrator to secure the payment of such debt. The distinction between the right of an administrator to pledge or alien any of *such* property, and his right to pledge or alien the choses in action constituting a part of the assets of the estate, is clearly pointed out in the case of *Rhame* v. *Lewis, supra.* Under the sale made by Mayrant as administrator, by the authority of the court, the legal title to the land covered by the mortgage passed out of the heirs and devisees of the said W. W. Rees into Paul Rees, and the property pledged by the administrator to secure the debt of Reynolds was not the land of the estate of W. W. Rees, but one of the assets of his estate, in the form of a chose in action, which, according to the case of *Rhame* v. *Lewis,* the administrator had a right to pledge for the uses of the estate. The land, therefore, which stood as security for the payment of the debt to Reynolds, must continue liable to the payment of that debt, in whosesoever hands it may be, the rights of purchasers for valuable consideration without notice not being involved.

The appellants, in their thirteenth exception, complain that the Circuit Judge erred "in ignoring the testimony that, at the time Mayrant withdrew the bond and mortgage of Paul Rees from Judge Fraser, that he, Mayrant, had paid to the said Fraser more than the amount of the bond of Paul Rees on the obligation to which said bond was collateral, some of which payments are stated to have been made by Paul Rees." We do not understand that the testimony shows the fact to be as assumed in this exception. The precise time at which the bond of Paul Rees was delivered to Mayrant for suit by Judge Fraser does not appear, but it must have been either on or before April 15, 1876, as that is the day on which it is alleged that suit was commenced on the bond. At that date the payments endorsed on the bond

of Mayrant to Reynolds did not amount even to the face of the bond of Paul Rees to Mayrant, and even the subsequent payments, one of which appears to have been made by Paul Rees and Lazarus Rees, do not appear to have been sufficient in amount to cover the amount of the bond of Paul Rees.

But, even granting the fact to be as assumed in the exception, we do not see how it would affect the case, except so far as any payments made on the bond of Mayrant to Reynolds may have been made by Paul Rees. For if Mayrant had paid to Reynolds on his bond an amount greater than the bond of Paul Rees, that would not operate as a satisfaction of the latter bond. There were several notes, besides the bond of Paul Rees, which were assigned to Reynolds as security for the payment of the bond of Mayrant; and until that bond was fully paid, Reynolds had a right to hold all of the notes and the bond of Paul Rees as collateral security for the payment of such balance, and could enforce all or any one of them so far as might be necessary for the payment of such balance. But of course any payment made by Paul Rees on the bond of Mayrant to Reynolds should operate as a credit on the mortgage debt of Paul Rees. As there seems to have been at least one such payment, in part at least, credited on the bond of Mayrant to Reynolds, we think the judgment appealed from should be reformed, so that in ascertaining the amount due on the mortgage debt credit should be given for any payments made by Paul Rees on the bond of Mayrant to the plaintiff's testator.

The appellants, in their fourteenth exception, complain that the Circuit Judge "erred in not holding that if the powers claimed for Charles Mayrant, administrator, were duly granted, that they were specific and limited and could not be departed from." This exception is couched in such general terms that we might well disregard it. What were the limitations upon the powers of the administrator, or in what respect such limitations were disregarded, are not stated; but we infer from the argument that appellants' contention is that the administrator was authorized to sell the lands for cash to relieve the pressing necessities of the estate, and that his sales on credit were unauthorized. The testimony does not show that the administrator was author-

ized to sell for cash only, and we are not at liberty to infer that such was the order. It may be that a sale of land for cash at that time would have been very disastrous to the interests of the estate, and it may have been much the best policy to have sold on a credit and use the proceeds in the form of choses in action to raise the money needed, as was done. Be that as it may, however, we do not see any evidence that the administrator violated the terms of the order of sale, and hence we see no foundation for this exception, even if it had been taken in proper form.

The judgment of this court is that the judgment of the Circuit Court be modified as herein directed, and that in all other respects it be affirmed.